OPINION. Disney, Judge-. Since we have found that the petitioner’s gross sales, after discounts of $620.15 for the fiscal year, are $97,769.92, it is apparent therefore that its renegotiable profits are no more than that amount, therefore are less than $500,000, and that the petitioner is, within the language of section 403 (c) (6) of the Renegotiation Act, exempt from renegotiation, unless, under the same section, as the respondent contends, it was “under the control of or controlling or under common control with” Nichols, the renegotiate sales of which were more than $500,000. We, therefore, examine the situation as to such common control — for it is not argued that petitioner controls or is under the control of .Nichols. 'The petitioner argues, first, that control means legally enforceable control. Though conceding that the phrase “under common control” has no fixed meaning, further, that “control” of a corporation, or common control of two, may be used more broadly than to consider it to be only in those who own a majority of the stock, the petitioner nevertheless says that the situation here should be controlled by Handy & Harman v. Burnet, 284 U. S. 186, holding that, for the purpose of consolidation of tax returns, “control” may not depend upon control of stock without title, beneficial ownership or legal means to enforce it, and under Atlantic City Electric Co. v. Commissioner, 288 U. S. 152, is not satisfied by acquiescence or business considerations without binding force, in the absence of legal title or beneficial ownership. The respondent, contra, points out that regulations promulgated by the War Contracts Price Adjustment Board, section 348.4 as to tests of control, provide, inter alia, that “actual control is a question of fact”; further, that such regulation was promulgated under the Renegotiation Act of 1942, and acquires force of law because that Act was reenacted without change in this respect in 1943. • Congressional intent, the respondent argues, was to permit renegotiation of any unit operated in common with another, as it is contended there is here. After study of the cases, we have concluded that those involving consolidated returns, under different statutes, do not here control. In Hug Co. v. War Contracts Price Adjustment Board, 14 T. C. 621, we recently took the view that actual control, and not legally enforceable control, is the proper test under the Renegotiation Act. We follow that view here. We, therefore, proceed to examine the facts as to whether there was in fact common control of Nichols and petitioner. The petitioner further argues that there was none, even if legally enforceable control is not the criterion, for it is contended, in substance, by petitioner that it can only at the most be said that those controlling petitioner were subject to mere possibility of influence in fact unexercised by those controlling Nichols. Moreover, petitioner says “common control” means something more than control by the same persons, and does not apply to two businesses unrelated to each other. We have on the last point in Moening v. War Contracts Price Adjustment Board, 14 T. C. 589, in effect, held otherwise, for there we held there was common control where two different businesses were owned by the same parties, equal general partners. The facts, duly stipulated and found, disclose that Nichols & Co., • Inc., was owned and controlled by members of the Nichols, Wellman and Hackett families, including the son-in-law of Arthur O. Wellman, president-director; that those families furnished all capital and all of the limited partners of petitioner, except S. Kathaleen Alexander, but that she is the owner of 20 per cent of the common stock in, and wife of the president-treasurer of Alexander Wool Combing Company, owned by the Nichols, Wellman and Hackett families as to all of the preferred stock (which was non-voting stock) and half of the common stock; also, that the general partners of petitioner were officers of Providence, owned by the Wellman, Hackett and Nichols families; that the limited partners of petitioner had power at any time to terminate the partnership at will and thus to control it; that Jenks had been employed from about 1919 to about 1927 by a firm, one of whose two partners was a brother of John H. Nichols, director of Nichols & Co., Inc., and from 1940 by Providence; and that the grease business was incidental to the wool combing business and was carried on by petitioner in a small room in the back of the premises occupied by Providence. The machine used required only one man on each shift with no requirement of skilled labor. Petitioner was formed by counsel common to Nichols, Providence, and Alexander, because of question arising as to renegotiation of Alexander and Providence, and in order to prevent abandonment of the grease extraction business. From all of these circumstances and all the facts before us, we consider it clear that it would be altogether unrealistic to hold that there was not common control over Nichols and petitioner. That the Nichols, Wellman, and Hackett families could control the situation, at all times, and the existence of petitioner, as well as Nichols, seems to us, upon the factual basis adopted in the Hug case, obvious. That in the period here involved they did not in fact exercise such control is not seen as the important element. They had power of control, which in our view is the concept of the statute, and within its object. Petitioner on brief agrees that the interpretation of “control” or “‘common control’ * * * must depend upon the mischief which it was intended to prevent.” We think that it was within the intent of .Congress to prevent the division of a business otherwise renegotiable among members of one family or organization. The petitioner’s view, in substance, that there was no entity in the members of the three families is met, we think, by the manner in which they participate in the various companies, including petitioner. The organization of these different companies by members of the same families, including wives, a mother and son-in-law, as stockholders, is proof of intent to control them, and may not be overlooked with any regard for realism. The same principle which requires family matters to be strictly scrutinized indicates that we should not fail to recognize the fact of influence of the family relation upon the members. We conclude and hold that Nichols and petitioner were under actual common control, within the meaning of Section 403 (c) (6) of the Renegotiation Act; therefore that petitioner is subject to renegotiation. Reviewed by the Court. An order will be entered, accordingly, that the 'petitioner’s renegotiable profits in 191$ were excessive in the principal amount (before omy adjustment for State taxes measured by income) of $15,000.'